# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 16-cv-02521-LTB-GPG

KEVIN RENFRO,

    Plaintiff,

v.

ART SMITH, et al.,

    Defendants.

## RECOMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on a motion to dismiss filed by Defendants Correct Care, Heather Stanford (Hanvey), and Denise Vanalstyne (collectively "CCS" Defendants) (ECF # 90),[1] Plaintiff's response (ECF #102) and Defendants' reply (ECF #108). The motion has been referred to this Magistrate Judge for recommendation (ECF #91).[2] The Court has reviewed the pending motion, response, reply and all attachments. The Court has also considered the

---

[1] "(ECF #90)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with

entire case file, the applicable law, and is sufficiently advised in the premises. Oral argument has not been requested and the Court finds that it is not necessary in this circumstance. This Magistrate Judge respectfully recommends that the motion be DENIED.

The CCS Defendants move to dismiss on the basis that: (1) Plaintiff has failed to establish a direct and causal link between a custom or policy and the violation alleged (ECF #90, pp. 7-8). *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (a) The CCS Defendants argue that, to the extent there may be a policy promulgated by the Mesa County Sheriff's Office (MCSO) and set forth in the inmate handbook, that policy is attributable to Mesa County and not the CCS Defendants thus not establishing liability (ECF #90, p. 10). (b) The CCS Defendants further argue that, to the extent that state law sets forth requirements in this area, CCS is further insulated from any assertion that CCS promulgated any policy in this regard (ECF #90, p. 10). (c) The CCS Defendants argue that the assertion that CCS is essentially part and parcel of this policy due to financial incentives built into CCS' contract with Mesa County is "wholly conclusory" thus not meeting the *Monell* pleading requirements (ECF #90, pp. 11-12); (2) Defendants assert that the 8th and 14th Amendment claims against Stanford and Vanalstyne need be dismissed for failure to establish "the requisite personal participation" as each was bound by the MCSO policies and inmate handbook, thus having no control over the possibility of off-site treatment (ECF #90, p. 12); and (3) Defendants argue that Plaintiff has failed to sufficiently assert a civil conspiracy, basically asserting that allegations of parallel conduct are insufficient to show the meeting of the minds necessary (ECF #90, pp. 21-22).

---

a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

Standard of Review

The Court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Dismissal under Rule 12(b)(6) may also be based on the lack of a cognizable legal theory. *See Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, which, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). Although allegations of fact are accepted as true, legal conclusions are not. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. Accordingly, the Court disregards conclusory statements and looks only to whether the remaining factual allegations plausibly suggest the defendant is liable. *Khalik*, 671 F.3d at 1190-91.

Where the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations omitted) ("The nature and specificity of the allegations required to state a plausible claim will vary based on context . . . [and] requires the reviewing court to draw on its judicial experience and common sense." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214-15 (10th Cir. 2011)).

> "The mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the

court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

As was noted in *Robbins*, "context matters." *Robbins*, 519 F.3d at 1248 (citation removed). "A simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time." *Id*. "[I]t is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . ." *Id*. at 1250 (emphasis in original) (continuing on to determine that collective allegations against defendants as a whole makes it impossible to ascertain what any specific defendant may have done). At the pleading stage, factual assertions may proceed upon information when later investigation and discovery will likely support such contentions. *See* Fed.R.Civ.P. 11(b)(3).

Rule 8

The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the Court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief. *See Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989). The requirements of Rule 8 are designed to meet these purposes. *See TV*

*Communications Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992). Rule 8(a) provides that a complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct." "At some point the factual detail in a complaint may be so *sketchy* that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.,* 499 F.3d 663, 667 (7th Cir. 2007) (emphasis mine).

Plaintiff's Allegations

The current operative complaint is Plaintiff's second amended complaint (ECF #80). Therein, Plaintiff alleges the following as is relevant to this issue and that the Court must accept as true in this posture:

Plaintiff was an inmate in the Mesa County Detention Facility (MCDF) from 7/17/15 to 7/28/17 (mostly pre-trial with the final 5 days post-conviction) (ECF #80, p. 2). Defendant Correct Care (CCS) is a for profit corporation contracted to provide medical health services for the MCDF. (ECF #80, p. 4). CCS helps develop and administer policies relating to such care (ECF #80, p. 4). CCS acted in "concert [with the Mesa County Defendants] to adopt, form and enforce policies and customs . . ." (ECF #80, p. 4). Defendant Hanvey supervised medical services at the MCDF (ECF #80, p. 5). Hanvey denied Plaintiff medical care (ECF #80, p. 5).

Defendant Vanalstyne is the off-site medical scheduler and denied Plaintiff access to necessary off-site care (ECF #80, p. 5).

Plaintiff suffered an arm/wrist injury prior to entry into the MCDF, had a fracture, and had that casted (ECF #80, pp. 6-7). Plaintiff was jailed at the MCDF, believed that he could not protect himself while casted and believed that the arm was healed, and thus decided to and did remove the cast (ECF #80, p. 7). Plaintiff, subsequent to removing his cast, had discomfort, pain, and swelling (ECF #80, p. 7). Plaintiff, on 12/16/15, submitted a medical kite regarding the wrist, was seen by medical staff on 12/18/15, had an x-ray showing a displaced fracture and other fractures on 12/22/15, and received no further treatment at the recommendation of medical staff on 12/26/15 (ECF #80, p. 7). During January and February, 2016, Defendant continued to request treatment, complaining of continued pain, and ultimately had an orthopedic consult approved on 2/18/16 and "it was also determined that, because the medical condition was pre-existing, [Plaintiff] would be financially liable for all services provided" (ECF #80, p. 8).

Defendant Hanvey "made the decision to deny [Plaintiff] outside medical treatment" (ECF #80, p. 8). On 2/18/16, Plaintiff was informed that he needed to have the full financial amount for any off-site treatment before it would be scheduled (ECF #80, p. 9). Plaintiff never had the money, never received off-site treatment during his 15 months in the MCDF, and suffered from continuous and substantial pain as a result (ECF #80, p. 9). "When [Plaintiff] was informed that he would not be allowed access to the outside medical care because of his inability to pay, he was directed by defendant Denise Vanalstyne to review the Jail "Inmate Handbook", which contained policies concerning inmate access to medical care" (ECF #80, pp. 9-10). Vanalstyne had the responsibility to schedule off-site medical care, was a gatekeeper for such care, and refused to schedule Plaintiff such care as a result of policies and customs utilized by the

MCSO and CCS (ECF #80, p. 10). The handbook has policies "mak[ing] detainees responsible for off-site medical treatment of preexisting conditions," "mak[ing] detainees responsible for all outside medical expenses," and requiring "the full amount for the costs of outside medical services" to be in the inmates account prior to accessing the care (ECF #80, p. 10).

Defendant CCS' contract with Mesa County required CCS to develop medical care policies, CCS developed such policies, and such policies caused the Constitutional violations of Plaintiff's rights (ECF #80, p. 11). CCS had a financial incentive, under the contract, as developed by CCS and Mesa County, to deny Plaintiff adequate medical care (ECF #80, pp. 11-12). Vanalstyne, as gatekeeper, knew of Plaintiff's condition, yet failed to act thus not fulfilling her role (ECF #80, p. 12). Hanvey, knowingly deprived Plaintiff of Constitutional rights and was deliberately indifferent, leading to substantial harm to Plaintiff. CCS, Vanalstyne and Hanvey refused Plaintiff the off-site treatment they knew he needed (ECF #80, p. 16).

Additional Facts

The court may consider documents which are not attached to the complaint when the additional documents/ facts are incorporated by reference or judicially noticed. *See City of Boulder v. Public Serv. Co.,* 996 P.2d 198, 203 (Colo. App. 1999); *Walker v. Van Laningham*, 148 P.3d 391, 397 (Colo. App. 2006). "If [the] documents contradict the allegations of the . . . complaint, the documents control and [the] court need not accept as true the allegations in the . . . complaint." *Rapoport v. Asia Electronics Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000). Plaintiff has included substantial additional facts, both within his response (ECF #102) and in attachments thereto (ECF #102, attachments 1 & 2). Defendants have also included some additional facts (ECF #90, attachment 1). Citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936,

941 (10th Cir. 2002), Defendant asserts that it is improper for Plaintiff to raise "new or expanded arguments beyond those contained within the four corners . . ." of the complaint (ECF #108, p. 5). *Jacobsen* specifically states that "[i]n addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the document's authenticity." *Jacobsen*, 287 F.3d at 941 (internal citation removed).

The additional facts appended are: (1) selected pages from the Mesa County Inmate Handbook, pp. 1, 6, & 7 of 13 (ECF #90-1) (referred to extensively by Plaintiff in his complaint); (2) contract(s), dated 12/14/2015, between Mesa County and Correct Care Solutions, LLC for the provision of medical services at the Mesa County Detention Facility (labeled attachments A & B) (ECF #102-1); and (3) medical notes for Defendant Renfro (labeled attachment C) and Defendant's interrogatory responses (labeled attachment D) (ECF #102-2).

Consideration of additional facts, if appropriate, is a different circumstance than consideration of a new assertion, essentially an attempted amendment of the complaint through the response to the motion to dismiss. Such an amendment must be made through separate pleading, a motion to amend. *See Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 369 (10th Cir. 1989). To the extent they are propounded, this Court will not consider any new theories of liability. I specifically did not consider any of the additional facts in formulating this Recommendation.

Discussion

Plaintiff's first claim for relief, entitled First Constitutional Claim, 42 U.S.C. 1983 – Due Process of Law – 14th Amendment, US Const. (ECF #80, p. 15), is against all Defendants. Plaintiff claims the policy of requiring pre-trial detainees to prepay costs for pre-existing conditions to be a violation of the 14th Amendment (ECF #80, p. 15). Plaintiff further claims this to be "an applied" violation (ECF #80, p. 16). Plaintiff claims that the CCS Defendants knew of his need for treatment, knew of the risk of harm for failing to provide treatment, refused the treatment, were deliberately indifferent to Plaintiff's "necessary medical needs," caused damages, and did so to serve the financial interests of CCS (ECF #80, p. 16).

Plaintiff's second claim for relief, entitled Second Constitutional Claim, 42 U.S.C. 1983 – Cruel and Unusual Punishment- 8th Amendment, US Const. (ECF #80, p. 17) is against all Defendants. Plaintiff claims that the pre-payment policy was, "on [its] face" and "as [] applied" ECF #80, p. 18, a violation of the Eighth Amendment. Further allegations state that the CCS Defendants knew of the injury, the need for treatment, the safety risk, harm and pain involved in not providing the treatment, and yet the treatment was denied or delayed (ECF #80, pp. 18-19).

Plaintiff's third claim for relief, entitled 42 U.S.C. 1983 – Civil Conspiracy, includes all CCS Defendants (the individual Defendants in their individual capacities) (ECF #80, p. 20). Essentially, this claim, incorporating the allegations *supra* in the complaint, alleges that the unlawful acts were committed as part of a conspiracy or common scheme, primarily to minimize costs to defendants. *Id*.

The CCS Defendants move to dismiss on the basis that: (1) Plaintiff has failed to establish a direct and causal link between a custom or policy and the violation alleged (ECF #90,

pp. 7-8). *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (a) The CCS Defendants argue that, to the extent there may be a policy promulgated by the Mesa County Sheriff's Office (MCSO) and set forth in the inmate handbook, that policy is attributable to Mesa County and not the CCS Defendants thus not establishing liability (ECF #90, p. 10). (b) The CCS Defendants further argue that, to the extent that state law sets forth requirements in this area, CCS is further insulated from any assertion that CCS promulgated any policy in this regard (ECF #90, p. 10). (c) The CCS Defendants argue that the assertion that CCS is essentially part and parcel of this policy due to financial incentives built into CCS' contract with Mesa County is "wholly conclusory" thus not meeting the *Monell* pleading requirements (ECF #90, pp. 11-12); (2) Defendants assert that the 8th and 14th Amendment claims against Stanford and Vanalstyne need be dismissed for failure to establish "the requisite personal participation" as each was bound by the MCSO policies and inmate handbook, thus having no control over the possibility of off-site treatment (ECF #90, p. 12); and (3) Defendants argue that Plaintiff has failed to sufficiently assert a civil conspiracy, basically asserting that allegations of parallel conduct are insufficient to show the meeting of the minds necessary (ECF #90, pp. 21-22).

Deprivation of a Right

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." The statute does not create

any substantive civil rights; rather it creates only a remedy for violations of rights secured by the federal statutory and constitutional law. *Wilson v. Meeks,* 52 F.3d 1547, 1552 (10th Cir.1995). "In order to successfully state a cause of action under section 1983, [Plaintiff] must allege ... the deprivation of a federal right and that the alleged action was taken under color of state law." *S. Disposal, Inc. v. Texas Waste Mgmt.,* 161 F.3d 1259, 1265 (10th Cir.1998) (internal quotation marks and citation omitted).

Although "neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners, [t]hey are ... responsible for taking reasonable measures to [e]nsure the safety of inmates." *Lopez v. LeMaster,* 172 F.3d 756, 759 (10th Cir.1999) (internal citation omitted). Accordingly, a jailer violates the Eighth Amendment if he shows deliberate indifference to a convicted inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *see also Farmer v. Brennan,* 511 U.S. 825, 834 (1994). "Under the Fourteenth Amendment's due process clause, pretrial detainees ... are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Frohmader v. Wayne,* 958 F.2d 1024, 1028 (10th Cir.1992); *see also Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979). Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Gamble,* 429 U.S. at 103, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (*quoting Gregg v. Georgia,* 428 U.S. 153, 173 (1976)).

Under the objective component Plaintiff must establish that he was deprived of a medical need that is, objectively, "sufficiently serious." *Farmer,* 511 U.S. at 834. When the prisoner's Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner must "show that the delay resulted in substantial harm." *Oxendine v. Kaplan,* 241 F.3d 1272, 1276

(10th Cir.2001) (internal quotation marks omitted). That "substantial harm" can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm. *See Mata v. Saiz,* 427 F.3d 745, 753 (10th Cir.2005). The "substantial harm" can also be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics. *Id.* Although "not every twinge of pain suffered as a result of delay in medical care is actionable," when the pain experienced during the delay is substantial, the prisoner "sufficiently establishes the objective element of the deliberate indifference test." *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir.2000).

The subjective component of the test requires a showing that the defendant acted with a culpable state of mind. *Farmer,* 511 U.S. at 836 (explaining that the required *mens rea* lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other.") "[A] prison official cannot be found liable ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

In his complaint, Plaintiff has adequately plead and alleged a serious medical need. Plaintiff claimed that, as early as December 15, 2015, he began the process of seeking medical attention for his "swollen and painful left wrist." (ECF #80, p. 7). The attempts to seek treatment continued until February 18, 2016 when Plaintiff claims to have been denied treatment because he was unable to pay for outside services. *Id*. at pp. 8-9. Denied treatment, Plaintiff

then continued to suffer for an additional fifteen months "suffer[ing] from continuous and substantial pain due to the untreated medical condition." Those allegations are sufficient to show, for purposes of this stage of the proceedings, that Plaintiff was deprived of a medical need that is objectively sufficiently serious and that the delay resulted in substantial harm. In terms of deliberate indifference, this has been sufficiently plead in that Plaintiff claims that Defendant Vanalstyne, as the off-site scheduler, personally knew of the situation and "refused to schedule an off-site orthopedic consultation . . ." *Id*. at p. 10. Defendant Hanvey is also alleged to have personally denied care. Both Hanvey and Vanalstyne are alleged to have known sufficient facts to infer that they disregarded a substantial risk of serious harm to Plaintiff. The length of time Plaintiff sought treatment for his injury, yet was denied, certainly bolsters the claim that Defendants knew and yet disregarded the substantial harm Plaintiff was suffering. The substantial pain claimed by Plaintiff equates to "considerable pain." *See Garrett v. Stratman*, 254, F.3d 946, 950 (10th Cir. 2001).


Personal Participation

As an initial matter, facts speaking to a defendant's personal participation are required. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir.2008) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation"). To establish § 1983 liability in an individual capacity, " 'the plaintiff must establish a deliberate, intentional act' on the part of the defendant 'to violate [the plaintiff's legal] rights.' " *Parro v. Barnes,* 624 F.3d 1322, 1327–28 (10th Cir.2010) (*quoting Serna v. Colo. Dep't of Corr.,* 455, F.3d 1146, 1151 (10th Cir.2006)).

Because personal participation is an essential element, Plaintiff must show that each named Defendant personally caused the deprivation of a federal right. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 166 (1985). A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between his or her conduct and the described violation. *Stidham v. Peace Officer Stds & Training,* 265 F.3d 1144, 1156 (10th Cir.2001). Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for constitutional violations committed by his or her subordinates. *Serna,* 455 F.3d at 1151 ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *Fogarty,* 523 F.3d at 1162.

As set forth *supra*, Plaintiff has sufficiently alleged personal participation by both Hanvey and Vanalstyne through their direct actions and involvement in this matter. Certainly and particularly with regard to Hanvey, that nexus is weaker and limited to statements such as: Defendant Hanvey supervised medical services at the MCDF (ECF #80, p. 5); and Hanvey denied Plaintiff medical care (ECF #80, p. 5). However, these allegations are more than mere speculation and plausibly set forth factual support for a claim or claims upon which relief could be granted. As to Defendants' theory that insulation is somehow provided because the MCDF Handbook "governed and controlled", ECF #90, p. 13, this is belied by the "as applied" assertions Plaintiff makes in his complaint. *See e.g.* ECF #90, p. 16, para. 75. This goes along with the argument that in some way insulation exists for a Constitutional violation due to an existing state statute. Due to the Supremacy Clause of the United States Constitution, no such insulation is afforded. *See N.N. ex rel. S.S. v. Madison Metro Sch. Dist.*, 670 F.Supp. 2d 927, 933 (W.D. Wis. 2009) ("In the context of § 1983, the reason for rejecting such a defense is the

idea that, under the Supremacy Clause, public officials have an obligation to follow the Constitution even in the midst of a contrary directive from a superior or in a policy" (citation removed)).

Supervisory Liability

However, a claim against an individual officer for an alleged constitutional violation does not automatically result in liability for the officer's supervisors or the government entity for which the officer works. *Brown v. Montoya,* 662 F.3d 1152 (10th Cir.2011) (explaining that there is no *respondeat superior* liability under § 1983, only liability based on personal involvement in the alleged constitutional violation) (citation omitted). In analyzing this situation, the Court must determine if Plaintiff has adequately alleged that the CCS Defendants violated Plaintiff's federally protected rights. In doing so, I "consider[ ] whether the facts taken in the light most favorable to the plaintiff show that the defendant's conduct violated a constitutional right" cognizable under § 1983. *Poolaw v. Mercantel,* 565 F.3d 721, 728 (10th Cir.2009).

A defendant in a supervisory position may be personally involved in an alleged constitutional violation committed by his or her subordinates in two situations. First, supervisor liability may arise when the supervisor was personally involved in directing the subordinates to take the action that resulted in the alleged constitutional violation. *Woodward v. City of Worland,* 977 F.2d 1392, 1400 (10th Cir.1992). Second, supervisor liability may arise when the supervisor had actual knowledge that the subordinates were committing the alleged constitutional violation and acquiesced in its commission. *Id.* (citing *Andrews v. City of Philadelphia,* 895 F.2d 1469,

1478 (3d Cir.1990) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")).

Under the second situation liability can be imposed upon a "defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy, the enforcement (by the defendant-supervisor or [his] subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Dodds v. Richardson,* 614 F.3d 1185, 1199 (10th Cir.2010), *cert. denied,* 131 S.Ct. 2150 (2011). When an official is sued under § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must demonstrate not only that a subordinate employee violated her rights but that the supervising official "by virtue of his own conduct and state of mind did so as well." *Id.* at 1197 (*citing Iqbal,* 556 U.S. at 662). The state of mind required for supervisory liability is the same as that for the underlying constitutional offense. *Porro,* 624 F.3d at 1328; *Dodds,* 614 F.3d at 1200 (citations omitted).

Sufficient facts and claims are also set forth with regard to Defendant Hanvey in her supervisor role as supervisor of medical services. Plaintiff asserts that policies in the MCDF Inmate Handbook concerning access to care were unconstitutional as applied to him (ECF #80, p. 10, para. 47). Plaintiff asserts that a contract was entered into by CCS (ECF #80, p. 11, para. 50). Plaintiff asserts that, as applied, these policies violated his rights (ECF #80, p. 16, para. 75). And, as particular to Defendant Hanvey, there is an assertion that "Defendant's overt acts included adoption and/or implementation of Mesa County Jail medical care polices, written and unwritten, . . ." *Id*. at p. 20, para. 102. This is enough to, at this stage, establish both personal participation and supervisory liability.

Corporate Liability

The established principles of municipal liability have been found to apply to § 1983 claims brought against private corporations like CCS. *See, e.g., Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1216 (10th Cir.2003) (finding that "[a]lthough the Supreme Court's interpretation of § 1983 in *Monell* applied to municipal governments and not to private entities acting under color of state law, case law from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants."). Therefore, according to the principles of municipal liability, a private actor such as CCS "cannot be held liable *solely* because it employs a tortfeasor-or, in other words ... cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to be held liable for the allegedly tortious acts of its agents, Plaintiff must show that CCS directly caused the constitutional violation by instituting an "official municipal policy of some nature," that was the direct cause or moving force behind the constitutional violations. *See Smedley v. Corr. Corp. of Am.,* 175 Fed. Appx. 943, 944 (10th Cir.2005).

Without considering the additional factual information provided by Plaintiff, there are sufficient factual allegations to support the claims under this theory. Plaintiff alleges that CCS "help[ed] develop and administer the policies related to outside or off-site medical care . . . ." (ECF #80, p. 4) and that CCS "acted for and in concert with Mesa County . . . to adopt, form, and enforce policies and customs . . . ." *Id.* It is asserted that CCS independently adopted policies that caused the alleged violations and that CCS had a financial incentive to do so (although motive need not be proven). *Id.* at pp. 11-12. The allegations set forth are sufficient to plead these claims, keeping in mind both *Monell* and *Smedley* and these claims are not based on either a *respondeat superior* or a vicarious liability theory. Plaintiff has showed the existence of a

municipal custom or policy and showed a direct causal link of the formation/adoption/implementation of this policy to CCS. The custom or policy, created and applied directly to Plaintiff, is sufficient without showing the existence of application to others due to the "as applied" nature of the claim.

Civil Conspiracy

Plaintiff's claims, when taken in the light most favorable to him and applying the inferences that I must at this stage show more than parallel conduct and are sufficient to assert a single plan. *See Snell v. Tunnell*, 920 F.2d 673, 701-02 (10th Cir. 1990). Plaintiff has sufficiently plead a conspiracy and the actual deprivation of his rights. *See Id*.

For the foregoing reasons, I respectfully RECOMMEND that the motion to dismiss be DENIED.

Dated at Grand Junction, Colorado this April 6, 2018.

Gordon P. Gallagher
United States Magistrate Judge